which is number 14-2068. Otherwise, the times will be as allotted to counsel. First case, 14-2068, United States v. Luis Angel Manso-Cepeda. Thank you. Good morning, Mr. Boswell. Good morning, Your Honor. Good morning to all the judges, Judge Barron, Judge Hawkins, Judge Torreda. I would like to reserve two minutes out of the ten minutes for rebuttal, Your Honor. Your Honor, this is a case about aiding and abetting. The case involves a friend giving a ride to another friend who happened to be carrying a weapon, a shotgun. The government charged him with aiding and abetting in the possession of the shotgun as a felony possession. We submit that the government did not present sufficient evidence to show requisite knowledge or intent to assist the rider, the passenger in his vehicle, with the possession of the gun. Actually, the possession was already completed by the time that gentleman got into the vehicle of my client. The weapon was a 12-gauge shotgun? That's correct, Your Honor. 26 inches long? Sixteen and three-quarters inches long based on the testimony. Originally, it was around 26, but it had been cut off. And how was the owner or the possessor of the weapon dressed? He had a T-shirt and shorts, Your Honor. Baggy shorts, but shorts. Go ahead. And he was sitting in the rear seat of the vehicle directly behind the driver, which is my client, Mr. Manso Cepeda. And one of the testimonies showed that there was no testimony that the defendant, my client, did anything to assist the felony possession in the possession of the gun itself, meaning there was no evidence that they saw him give him the gun, tell him to do anything with the gun. They simply saw when my client stopped after evading an alleged stop by the police, they saw that the rear door of the vehicle opened and that my client got the felony possession, placed the gun on the floor, and then my client sped off. This is from a jury verdict, isn't it? That is correct, Your Honor. So the evasion is no longer alleged, correct? Yes, Your Honor. It's no longer alleged. Well, we don't know what the jury, if they decided that that was part of an overt act for the aiding and abetting or not, because that's not what the verdict formed, but you're correct. Assuming the facts in favor of the government, then there was an evasion after they were trying to stop the vehicle. My client did submit a statement to the agent that was entering into the record, which he said he wanted to go to a place that was lit, that was safer than stopping in the middle of the road that was there, and he did end up stopping further down two streets over. Can I just clarify one thing? Is your argument dependent on your client not knowing the gun was there? That is correct. So if it was reasonable for a jury to infer that your client saw the gun, then you lose? I don't know that I lose, Your Honor, because I don't know that if a felon in possession has a gun and I just give him a ride without any common criminal intent. Is your argument that even if he did know there was a gun, there was still insufficient evidence? That is correct, Your Honor. So could you just explain what the theory of that is? So just assume that your client knew he had a gun the whole time. The crime of felon in possession is basically the elements are that the person has a conviction of a year or more and that he has a gun. So we know that Lisandre Casillas, the passenger in the rear seat, was a convicted felon, and we stipulated that he had the gun. So all that was stipulated. Now, my client, Mansouria, has to be that he's doing something to further the possession of the gun. My client... And the evasion wouldn't do that? I sustain at the trial that the evasion might have been, at best, an accessory after the fact, not an assistance for the felon in possession. Why? Because the crime already had been completed. But he's still in possession of it when he's evading. He's still in possession, but my client didn't do anything to assist in his possession. He only, if we believe that my client was evading for the purpose of evading the crime, he only evaded after the possession was already completed and he didn't do anything to assist in the possession itself. So at that moment, my client... What would count as aiding and abetting, handing him the gun? In other words, your theory is once the guy has the gun, anything you do to harbor or enable him not to be apprehended is not aiding and abetting the possession? I think that would be an accessory after the fact, Your Honor. Well, it might also be that, but it can't be aiding and abetting the possession? I think if there are sufficient facts, it could come to an aiding and abetting, and I sustain that those facts do not exist in this case. What's missing here that would be in the case you're imagining would be okay? I would say, Your Honor, that what's missing here is that the aider and abetter, when he, first of all, he ultimately did stop, second of all, without the lack of knowledge and there being no other crime than the possession of the gun, that there's no common purpose at all, based on Roseman, that there's no common purpose for the possession. Because if he knew that the gun was there, he didn't do anything to assist him in having it because he already had it, and if he didn't know, then it might be first brought up to his attention at the moment that the police tried to stop him, at which moment he stopped to get rid of the gun. I thought your client was the driver? Yes, the driver. And didn't the car pull over and the passenger dump the gun in the bushes? Right. Immediately after, like within a few feet, 100 feet from where they tried to stop him, the car pulled over, the driver pulled over, the passenger in the rear seat, the testimony was, opened the door, extended his body out of the car, and laid or put the gun in the side of the street on the bushes, and then the car sped off. Now, when he was asked by the police, why did you sped off? And he said, I wanted to go to a safe place, and he did go to a house that was a pastor that knew him, and there he stopped. Just so I get the theory, so if taking it, strongest form of your theory would be, the driver knows the guy in the back seat has a gun the whole time. Driver says, let me pull over so you can hide the gun. You would say that's not aiding and abetting the possession, that's just accessory after the fact. Your Honor, if he stopped to help him hide the gun, that's aiding and abetting. How is it aiding and abetting the possession on your theory? He's not aiding and abetting him getting rid of it. He's not aiding and abetting him getting rid of it. He stopped, then he finds out that there's a gun, then he's in a dark place, and he decides to move to a lit place, and they stop the testimony for the police when the car stopped. I'm just not fine. How does that help? I thought your theory is once the guy has the gun, you can't aid and abet the possession of it. Well, you can claim that it was a completed crime, but if you stated that it would be a continuing crime, if it's a continuing crime for the passenger... I'm asking what your theory is. My theory is that my client didn't know. From the facts of this case, could not the jury find beyond a reasonable doubt that he was aware of considering all the facts? Shotgun that's about this long, the fact that he has to get in, carrying the gun. Can't the jury conclude beyond a reasonable doubt that he was aware of it all along? Only by making inferences upon inferences, and that's... That's probably what the inference upon inference is. I'm sorry? You say it's inference upon inference. It looks to me like just one inference, and I wonder if it's not enough. Well, Your Honor, the expert from the government, Julio Velez, the weapons expert, testified that the gun had been modified for concealment. And the fact that that passenger was sitting behind the driver shows that the passenger didn't have a clear view to the passenger or what he might have had in his hands. But there was no evidence whatsoever that my client knew or should have known. There were inferences that the government tried to make, and we sustain those inferences are not enough because there's just not enough facts. Well, the thing is that, as I understand it, he was wearing a T-shirt and pants. That's correct. How is he going to conceal a... How is he going to be able to get into a car and sit down with a shotgun concealed on his person? Well, Your Honor, as he sat in the back seat, he could have come around the car away from the defendant's view and open the door and sit down and not show the weapon. I would love to do a video on that, but that's not the point right now. The point right now is could it have happened? Yes, it could have happened. There's no evidence that that's how he got in. There's evidence that he was in the back seat. But the evidence, the burden is on the government to prove that my client knew. And I'm sustaining that there's not enough evidence that my client knew. And my client denied that when he talked to the police and stated all the facts that the police did use based on my client's testimony that were truthful. You know, he admitted that he knew that Lysander Casillas had... Your time is up now. Yes, sir. When I get to heaven, counsel, and get to the pearly gates, I want you to be my lawyer. Thank you, sir. Good morning, Your Honors. AUSA Nicholas Cannon, may it please the court. At trial in this case, the government presented sufficient evidence for a jury to conclude, beyond a reasonable doubt, that the defendant was guilty as an aider and abetter to Lysander Casillas' possession of the firearm. Of the three elements of that offense, me and counsel agree. In essence, what's at issue is whether or not Defendant Manto-Cepeda possessed the requisite knowledge required under the statute in Post-Rosemont to convict him. There's three points that I would like to start with, Your Honors, regarding the facts, and you've touched on some of them. The first main point that the government would highlight, for Your Honors, that at the initial encounter with Manto-Cepeda's vehicle, the officers attempt to stop him. There's testimony from O'Neill Tejada that he's traveling at a regular rate of speed, and he turns on his lights, hits his siren one time, and actually puts his left hand outside of the window to stop the defendant. Immediately upon this action by the police, the defendant takes off. He takes off, he passes two more police vehicles, and finally, when he confronts the third vehicle, he drives onto a pedestrian curb to get to the next street over. The second kind of act on behalf of the defendant is once he's on this street, and he's essentially a looted law enforcement, he pulls over to the left side, the opposite side of the street, where there is a grassy brush area. This is a residential neighborhood. There's testimony from the officers about what was surrounding that, which was essentially residential homes. He stops at the only place where you could toss a weapon, and it wouldn't be seen. Unfortunately for him, Sergeant Bonilla and Officer Tejada see this entire incident, and they see the passenger who's seated right behind the driver take out the 12-gauge shotgun and throw it into the grass. Again, the defendant then flees. And I think the third point is with regards to that shotgun. Many of the cases in this circuit and around the nation deal with the concealment of handguns. We're talking about aiding and abetting liability. This was a 16-inch shotgun that Your Honor mentioned. It also had aftermarket grips. It had two handles on it, which a jury would be well within their right to conclude made it much more difficult to conceal in someone's pants. Were there other people in the car? Your Honor, the government's contention is that there was. There was a front-seat passenger. So the answer is yes? Yes, Your Honor. How many? One. There was a third person in the car? A third person in the front passenger seat. Was that person charged? The person was not apprehended. The person made good of their escape when the vehicle was ultimately stopped in a residence. The testimony from the officers is that that individual ran behind a shed. There was only one officer. Was he ever found? Never found, Your Honor. And there was one officer on the scene at that time. Officer Tejada and Sergeant Bonilla were in the same vehicle. They were a little bit behind because they stopped to actually pick up the shotgun, had to secure it in the back seat because of its size, which Tejada testified to. So Agent Cruz was the only officer on the scene when the defendant and Mr. Cascio were finally stopped, and he was the individual who saw, he was the officer who saw the third individual run towards the front of the vehicle and behind the residence. Did Monso have priors? No, he did not, Your Honor. The second point I would like to make, and counsel didn't mention it in his argument, but I think it's worth noting because of the aiding and abetting litigation that's going on in this country is that the instruction that was given by the judge in this case, first of all, none of the instructions were objected to, and it was done in light of the course decision in Rosemont. It's a pure sufficiency of the evidence appeal, right? That's the only contention by the government, but, Your Honor, they raised it in their brief that the jury wasn't given the appropriate instruction regarding advanced knowledge. That's the only reason that I bring it up, because he actually instructed them that they had to find that Monso Cepeda consciously shared the defendant, Lysander Cascio's, knowledge of the presence of the shotgun, and I think that's important. The weapon was in evidence? Yes, Your Honor. And photographs of the people being arrested? There was testimony from Special Agent Diaz of Homeland Security regarding his interview with both the defendants, and that's how it comes out that he's wearing, it's actually shorts. They say short pants. It's clarified on the record that it's actually shorts and a T-shirt. And the jury was just, that's important because the jury was, and these arguments were made before them. They clearly rejected Monso Cepeda's claim that he was unaware of the presence of the shotgun, and the government believes that all of his actions, particularly the pulling over onto the opposite side of the road at the time that they get rid of the shotgun, is enough for them to find. That's what I, what is the theory about where the aiding and abetting? Is it just being present with the person who is a felon in possession? Well, I think it would, mere presence clearly is not enough as an aider, and the jury was instructed to that as well, and I think that's what makes this case different than a lot of the other cases, is that he's not merely present. First he tries to evade police, and from that point once he makes the affirmative decision to essentially assist Mr. Monso Cepeda in getting rid of this gun, that's an ongoing possessory offense. From the time that they are in that vehicle with the shotgun to the time that they discard it on the side street,  that's where the aiding and abetting occurs. There's some case on the 924C context that the aider and abetter has to do something to facilitate the offense, and I think that that's, it's instructive here because that's exactly what he did with regards to... By virtue of the evasion? Exactly, by virtue of the evasion. He's assisting and facilitating that offense, assuming that the jury finds that he knew that the shotgun was there, which we contend there's ample evidence that you can use your common sense to determine that someone sitting right behind you a long time... Just so I understand, could you have charged him with accessory after the fact? I... For the same thing? I mean, evasion can in this context either be aiding and abetting the possession or accessory after the fact? Yes, I think you could. I think the government could have charged him with accessory after the fact for that brief period of time that they attempt to escape law enforcement after they've gotten rid of the firearm. I think that the accessory after the fact statute, as the government reads it, is contemplates a completed crime because it says, you know, whoever after such a crime helps to conceal someone. So I don't think in a possessory offense it's kind of a perfect language for what occurred here, but I think that you could make the argument, yes, that we could have charged... Do you have an analogous aiding and abetting possession case to this type of situation? I think, well, there's a... 924C cases are typically where this comes up. I don't have it off the top of my head, Your Honor, whether there's one that's similar to the 922G, but I do think, you know, there's an analogous cases that have been overturned in the sense that it was two people and we lack the knowledge element. Recently in this circuit, Rodriguez-Martinez was a case where we charged two brothers with aiding and abetting each other in a 924C violation. Right, but I'm in on the 922. No, I don't have anything in the 922G context. In any circuit where there's aiding and abetting possession? I'm happy to brief it for you, Your Honor, but I don't have anything that I can cite to you directly on the 922G. And I think there's a reason for that. It's not a typical charge because most often, in my experience, what we're dealing with is handguns, and proving the knowledge of another person's concealed weapon would be a difficult thing. I think also a lot of times you're not going to have the requisite knowledge for the prior felony conviction, which we have here. We have longtime friends. He admits to the special agent that he knew he was a felon. So when you have all those combined facts, this is something that's somewhat rare in terms of being able to charge someone with aiding and abetting. And you add into that the use of the vehicle, which was kind of my last point. I think that, you know, we treat in the criminal law, we treat vehicles a little bit different than we do, you know, just walking on the street with somebody who you may suspect has a firearm or may not because of the way with which they move through the community with such ease. And that's, I think, another fact that is in favor of sustaining the jury verdict in this case, and that is that they were able to get away for a period of time with the weapon, which makes it clear that he was acting as an aid or abetter to this possession. Thank you. Briefly, Your Honor, unless there's any questions, I would like to point out also that this did not happen in the vacuum, that they tried to stop this vehicle out of nowhere. The officers had to intervene or talk to the defendants prior that same night because some of the officers' friends had had an issue with Mr. Cassidy just the day before. So they had already talked to the defendant at Mr. Manso's father's house a few hours before, and then also in the middle of the night in the dark streets of Loiza, they tried to stop him, and Mr. Manso's reaction was initially flight, stop. I believe that at that moment, that's when he realized there was a gun in his vehicle, get rid of it, and go to a lit place where he could be safe, and then he stopped. When the officers arrived there, they were outside of the vehicle, and they were not handcuffed. They were handcuffed after Mr. O'Neill Tejeda arrived with the shotgun, so it was not like they immediately arrested them.  And in this case, the releasing of the shotgun is that opportunity. Immediately after the police tried to stop him, I inferred, the inference now hopefully being in my favor, that Mr. Manso said, you have what? And he made him get rid of the gun and then proceeded to a safe place to stop. And Rosemond does provide that in aiding and abetting, you have to have an opportunity to withdraw from the crime, and that is the withdrawal by Mr. Manso based on Rosemond. So I suggest that Mr. Manso was faced with a situation. As the court stated, he had no priority and no arrest. He reacted, maybe not the best way possible, but ultimately all he did that night was give a ride to his friend. Thank you. Thank you.